IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| STEPHANIE DENISE MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV. ACT. NO. 2:12cv552-TFM |
| | ) | (WO) |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

### I.  Procedural History

Plaintiff Stephanie Denise Martin ("Martin") applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*., and supplemental security income benefits pursuant to Title XVI, 42 U.S.C. § 1381 *et seq*., alleging that she is unable to work because of a disability.  Her application was denied at the initial administrative level.  The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ concluded that the plaintiff was not under a "disability" as defined in the Social Security Act.  The ALJ, therefore, denied the plaintiff's claim for benefits.  The Appeals Council rejected a subsequent request for review.  Consequently, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner").[1]  *See Chester v.*

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

*Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Pursuant to 28 U.S.C. § 636(c), the parties

have consented to entry of final judgment by the United States Magistrate Judge.  The

case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1631(c)(3).

Based on the court's review of the record in this case and the parties' briefs, the court

concludes that the Commissioner's decision should be AFFIRMED.


## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when

the person is unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to
> result in death or which has lasted or can be expected to last for a
> continuous period of not less than 12 months . . .

To make this determination, the Commissioner employs a five-step, sequential

evaluation process.  See 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific
> impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

> An affirmative answer to any of the above questions leads either to the next
> question, or, on steps three and five, to a finding of disability.  A negative
> answer to any question, other than step three, leads to a determination of
> "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[2]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).


## III. The Issues

### A.    Introduction

Martin was 38 years old at the time of the hearing and completed the ninth grade. (R. 54). She has prior work experience as a janitor. (R. 91). Martin alleges that she

---

[2] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

became disabled on November 7, 2008 due to back pain. (R. 56). After the hearing on November 3, 2010, the ALJ found that Martin suffers from severe impairments of lumbar degenerative disc disease, status post March 18, 2009 fusion with normal magnetic resonance imaging September 13, 2010 and obesity. (R. 22). The ALJ found that Martin is unable to perform her past relevant work, but that she retains the residual functional capacity to perform sedentary unskilled work with limitations. (R. 25). Testimony from a vocational expert led the ALJ to conclude that a significant number of jobs exist in the national economy that Martin can perform, including work as a machine tender and cuff folder. (R. 44). Accordingly, the ALJ concluded that Martin is not disabled. (*Id*).

## B. The Plaintiff's Claims

Martin presents the following issues for review:

(1)      The ALJ improperly rejected the opinion evidence from both the treating physician and the consultative examining expert.

(2)      The ALJ erred in failing to consider the claim under the Eleventh Circuit pain standard.

(3)      The ALJ improperly bases her findings on outside resources not in evidence at the hearing.

(Doc. No. 12).

4

## IV.  Discussion

### A.      Medical History

On January 16, 2008, Martin presented to Dr. Lasan Davis, an internist at American Family Care, complaining of back pain after falling the previous day. (R. 434). Dr. Davis sent Martin to Dr. Tai Q. Chun, an orthopaedic surgeon.  (R. 342).   During her appointment with Dr. Chun, Martin reported that she has pain in her lower back with some radiation down the left leg.  (R. 342).   Dr. Chun's diagnostic impression was lumbar strain and possible disc injury.  (R. 343).    On February 6, 2008, Dr. Tai Chun noted that an MRI of Martin's spine indicated a degenerating disc at L5-S1 with mild posterior protrusion and facet arthrosis at L4-5 and L5-S1 with no evidence of spinal stenosis.  (R. 455).

Between January and March of 2008, Martin attended several physical therapy sessions at HealthSouth Rehabilitation.  (R. 504, 512-13, 515-16, 520, 522, 525, 526, 529-30, 532).  She also cancelled or was a "no show" for several appointments. (R. 502-503, 506-508, 510-11, 514, 518-19, 521, 523, 528, 531).  On April 14, 2008, the physical therapist discontinued treatment due to Martin's failure to attend two final treatment sessions.  (R. 501).  In a Discharge Assessment, the physical therapist noted that Martin's failure to achieve certain goals and her complaints of pain were secondary to her non-compliance with appointments.   (R. 500).   He also found that "[a]t the time of [discharge], [Martin] had shown significant improvement in mobility [with decreased complaints of lower back pain] (5/10)" and that her pain was intermittent rather than

constant after therapy.   (*Id*). The physical therapist recommended that she continue treatment and participate in an exercise program in the community.  (*Id*).

On April 21, 2008, Dr. David Herrick at The Center for Pain administered a lumbar epidural steroid injection of DepoMedrol and Marcaine to Martin's lower back at L4-5 on the left.  (R. 452-454).

On November 7, 2008 -- the date Martin alleges the onset of her disability -- Martin returned to American Family Care complaining of back pain after lifting a heavy bucket of water.  (R. 436).   A physician diagnosed Martin with lumbar disc disease and referred her to physical therapy.  (*Id*).

On December 2, 2008, Martin returned to HealthSouth Rehabilitation, complaining of persistent lower back pain after lifting a heavy bucket at work.  (R. 494). Martin went to three physical therapy sessions in December.  (R. 488, 491, 494-496).  On December 12, 2008, the physical therapist found that Martin's pain decreased with modality exercises and that her pain after the session was a four on a ten-point scale.  (R. 488).   Martin cancelled her appointment on December 4, 2008, and failed to show for her physical therapy sessions on December 8 and 10, 2008.   (R. 480-89, 492).   Upon discharge, the physical therapist noted that Martin's physician recommended surgery and that she did not meet certain physical goals due to the "brevity of treatment."  (R. 485).

On December 17, 2008, Martin presented to Dr. Timothy Holt at The Center for Pain of Montgomery, P.C. with complaints of lower back pain.  (R. 399).   Martin reported that her pain increases when sitting for too long or lifting.  (*Id*).  Dr. Holt's impression was degenerative disc disease, low back pain, and lumbar radiculopathy and

recommended a discogram and surgical fusion.  (R. 397).  On December 22, 2008, Dr. David P. Herrick conducted a lumbar discography.  (R. 393, 401).  Dr. Herrick's impression was abnormal discography at L5-S1 with normal controls at L3-4 and L4-5. (*Id*).  During a follow-up appointment on January 22, 2009, Dr. Holt found that the discogram "showed reproduction of her typical pain at the L5-S1 level" and recommended surgery.  (R. 397).  On March 11, 2009, Dr. Holt ordered a back brace for Martin.  (R. 571).

On March 18, 2009, Dr. Holt and Dr. Wesley H. Barry performed an anterior lumbar interbody fusion L5-S1, implantation of cages x2 L5-S1, anterior plating L5-S1, anterior discectomy L5-S1.  (R. 360-61, 417).

During a post-operative appointment at The Center for Pain on March  31, 2009, Martin complained of some left hip pain, especially at night.  (R. 406).  A nurse instructed Martin to use ice and anti-inflammatory medication.  (*Id*).  During a follow-up appointment on April 15, 2009, Dr. Holt noted x-rays showed the anterior plate and screws in good position, that Martin's range of motion was limited, and that she needed stronger pain medication.  (*Id*).  Dr. Holt provided samples of Lyrica and prescribed a cane.  (R. 406, 569).

On May 14, 2009, Martin went to Dr. Holt for a follow-up appointment, complaining of pain in her lower back and around the SI joint.  (R. 444).  Dr. Holt's diagnostic impression was SI joint dysfunction and low back pain.  (*Id*).  He recommended bilateral SI joint injections. (*Id*).

On June 2, 2009, at Baptist Health Center East, Martin received bilateral SI joint injections of Depo-Medrol and lidocaine.  (R. 473).   On June 23, 2009, Martin went to Dr. Davis, complaining of back pain and vaginal discharge.  (R. 565).  Dr. Davis assessed lower back pain and referred her to Dr. Holt for treatment.  (R. 566).   He also diagnosed Martin as suffering from a vaginal infection and prescribed an antibiotic.  (*Id*).

Martin returned to Dr. Holt on July 9, 2009.  Dr. Holt noted that Martin's range of motion was limited and that x-rays indicated that the anterior plate and screws were in good position.  (R. 443).  Dr. Holt's diagnostic impression was status post lumbar fusion with improvement and low back pain.  (*Id*).   He recommended physical therapy and a follow-up appointment in two months.  (*Id*).

On July 21, 2009, Martin went to PT Solutions for physical therapy.  (R. 468). Martin completed an "Oswestry Disablity Index" form, in which she indicated how much her low back pain has affected her ability to manage everyday activities on a five-point scale, with 0 being the lowest and 5 being the highest.  (R. 469).  Martin rated her lower back pain as a 4 ("the pain is severe but comes and goes"); her ability to take care of personal needs as a 1 ("I do not normally change my way of dressing even though it causes some pain"); her ability to lift heavy objects as a 0 ("I can lift heavy weights without extra pain"); her ability to walk as a 3 ("pain prevents me from walking more than 1/4 mile"); her ability to sit as a 3 ("pain prevents me from sitting more than 1/2 hour");  her ability to stand as a 2 ("I cannot stand for longer than one hour without increasing pain"); her ability to sleep as a 4 ("my normal night's sleep is reduced by less than 3 quarters"); her social life as a 3 ("pain has restricted my social life and I do not go

8

out very often"); her ability to travel as a 3 ("I get extra pain while traveling which compels me to seek alternative forms of travel"); and the changing degree of pain as a 4 ("my pain is gradually worsening"). (*Id*). During a physical therapy session on August 8, 2013, the physical therapist noted that Martin reported no relief from surgery, post-surgery injections, or prior physical therapy and that her symptoms are extreme. (R. 465.) The physical therapist also noted that she was unable to tolerate certain tests due to the inability to lie supine or prone for any length of time without pain and that she "tolerated modalities well today but was unable to stay for entire treatment planned due to reports of time constraints." (*Id*).

On August 18, 2009, Martin returned to physical therapy reporting "some pain relief after [the] last visit, but has been unable to come to therapy because her daughter had emergency surgery" and that "she stepped in a []hole in the yard over the weekend and fell which aggravated her back." (R. 461). At the conclusion of the session, the physical therapist found that Martin "made mild progress and . . . show[ed] less superficial tenderness . . . [,] was able to tolerate prone position for treatment . . . [, and] is able to report great relief with treatment today." (R. 462). During Martin's final visit to PT Solutions on August 25, 2009, the physical therapist noted Martin "reports that she felt better after previous visit but that her pain levels quickly returned to baseline." (R. 459). During all three sessions, the physical therapist found "positive Wadell's signs" and noted Martin's problem with accomplishing short term goals to reduce pain along her lumbar spine and/or lower extremities was due to "lack of self management." (R. 459, 462, 463-64).

During a follow-up visit on September 10, 2009, Dr. Holt assessed low back pain and recommended an MRI of lumbar spine with gadolinium.  (R. 442).  On September 17, 2009, Dr. Holt found that the "MRI does not really reveal anything new."  (R. 441). Dr. Holt's impression was low back pain and lumbar radiculopathy and recommended a discogram.  (*Id*.)

On October 5, 2009,  Martin went to The Pain Center and received an epidural injection of DepoMedrol and Marcaine.  (R. 450).  The results of the epidurogram indicated abnormal discography at L4-5 with a relatively normal disc at L3-4 and previous fusion at L5-S1. (R. 449).

During a follow-up visit on October 15, 2009, Dr. Holt noted that the discogram showed reproduction of Martin's typical pain at the L4-5 level.  (R. 441).  Dr. Holt advised Martin about the "risks, benefits, and alternatives to treatment."  (*Id*).  His impression was degenerative disc disease of the lumbar spine and low back pain.  (*Id*). Dr. Holt recommended that Martin consider treatment options and return in one month. (*Id*).

On December 23, 2009, Martin returned to Dr. Holt, reporting that the previous injections "really did not help her that much" and indicated that she wished to proceed with surgery. (R. 548). Dr. Holt's impression was low back pain and lumbar radiculopathy and recommended a posterior lumbar interbody fusion at L4-L5.  (R. 548).

On February 25, 2010, Martin went to Dr. Davis' office reporting that she was "still in a lot of pain [and was] supposed to have another back surgery."  (R. 563).  A nurse practitioner found no edema and increased tenderness to the lower lumbar spine

with palpation.  (*Id*).  The nurse practitioner "in collaboration with Dr. Davis" assessed sinusitis, high blood pressure, low back pain, abdomen pain, possible bacterial vaginosis, and dizziness with left arm tingling.  (R. 564).  She prescribed Levaquin, Flagyl, Lisinopril, and Celebrex.  (*Id*).

During a follow-up appointment with Dr. Davis on March 30, 2010, Martin complained of back pain and sinusitis.  (R. 561).  Dr. Davis noted that she was "also here for continuing disability [due] to the low back pain."  (Id).  Dr. Davis' diagnostic assessment was low back pain with history of lumbar radiculopathy, status post lumbar fusion, hypertension.  (R. 562).  He noted that Martin was unable to work due to her chronic back problems and prescribed Soma, Darvocet, and Ryzolt.  (*Id*).

Martin returned to Dr. Davis' office on July 2010, complaining of low back pain interfering with her sleep at night and sinusitis.  (R. 559).  The nurse practitioner "in collaboration with Dr. Davis" increased Martin's dosage of Soma, discontinued her prescription of Darvocet, and prescribed Lortab.  (R. 560).

On September 9, 2010, Martin presented to Dr. Davis' office with complaints of chronic back pain and left hip pain and that Ryzolt and Lortab were not effective.  (R. 557).  The nurse practitioner noted an increased tenderness to the left side of Martin's spine with bilateral radiculopathy.  (*Id*).  She assessed "in collaboration with Dr. Davis" lower back pain and left hip pain and prescribed Soma and Zipsor and increased her dosage of Lortab. (R. 558).

11

On September 13, 2010, an x-ray indicated a prior L5-S1 fusion with no other significant abnormality and mild dessication and minimal bulging slight left foraminal encroachment at L4-5 .  (R. 568).

### B. Rejection of Treating and Consultative Physicians' Opinions

Martin argues that the ALJ improperly rejected the opinions of Dr. Leon Davis, her treating physician and practitioner of internal medicine, and Dr. Walid Friej, a consultative neurologist, about the severity of her limitations.

### (1)  Dr. Davis' Opinion

On July 22, 2010, Dr. Davis completed a Medical Source Statement, in which he found that Martin "has lower back pain and lumbar radiculopathy that causes her to experience severe pain when sitting or standing for prolonged periods of time" and that she "ambulates with a cane to give her support when walking."  (R. 550).  He also found that Martin suffers from "moderate to moderately severe" pain on a daily basis; that she is able to lift or carry no more than five pounds frequently; that she is able to occasionally use her fingers to grasp, manipulate, or assemble small objects; that she is never "able to use her hands to grasp or manipulate large objects (ability required to assemble large products, pick up pots and pans for commercial cooking)"; that she should never stoop or bend; that she is able to stand or walk no more than 2 hours during an eight-hour workday; that she would need to elevate her legs and alternate sitting and standing periodically; that she would need additional breaks lasting between one to two hours; that

her ability to understand, remember, and carry out simple instructions, make judgments involving simple work-related decisions, and deal with changes in a routine work setting is substantially impaired; and her ability to maintain attention, concentration and pace for a period of at least two hours is moderately impaired.  (R. 552-54).  He concluded that Martin would likely be absent from work about twice a month and that her limitations last or will last twelve months or longer.  (R. 554).

The law is well-settled; the opinion of a claimant's treating physician must be accorded substantial weight unless good cause exists for not doing so.  *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985).   The Commissioner, as reflected in his regulations, also demonstrates a similar preference for the opinion of treating physicians.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

*Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 CFR § 404.1527 (d)(2)).  The ALJ's failure to give considerable weight to the treating physician's opinion is reversible error.  *Broughton*, 776 F.2d at 961-62; *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir. 1982).  However, there are limited circumstances when the ALJ can disregard the treating physician's opinion.  The requisite "good cause" for discounting a treating physician's opinion may exist where the opinion is not supported by the evidence, or where the evidence supports a contrary finding.  *See Schnorr v. Bowen*, 816 F.2d 578,

582 (11th Cir. 1987).  Good cause may also exist where a doctor's opinions are merely

conclusory, inconsistent with the doctor's medical records, or unsupported by objective

medical evidence.  *See Jones v. Dep't. of Health & Human Servs.*, 941 F.2d 1529,

1532-33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991);

*Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987). The weight afforded to a physician's

conclusory statements depends upon the extent to which they are supported by clinical or

laboratory findings and are consistent with other evidence of the claimant's impairment.

*Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986).  The ALJ "may reject the

opinion of any physician when the evidence supports a contrary conclusion."

*Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983).  The ALJ must articulate

the weight given to a treating physician's opinion and must articulate any reasons for

discounting the opinion.  *Schnorr*, 816 F.2d at 581.

  After reviewing all the medical records, the ALJ rejected the opinion of Dr. Davis

because the treatment records do not support his assessment that Martin suffers from

marked physical limitations.

> . . . In this particular case, I find good cause for rejecting the treating
> physician's opinion . . . for a number of reasons.  Dr. Davis failed to
> provide one iota of clinical data or diagnostic information to support his
> opinions.  Based on a review of his medical records, it appears that he has
> never seen the results of any diagnostic testing other than urine tests.  The
> only relevant physical examination observation to be found in the records
> of his office is the repeated notation of superficial tenderness, *viz*,
> lumbosacral tenderness with palpation (a finding of highly questionable
> value in a patient with alleged low back pain. . . .).  Indeed, Dr. Davis was
> apparently unable to identify any medical impairment as the source of the
> symptoms and restrictions referred to by him.  As noted, his opinions are
> both internally inconsistent and inconsistent with the claimant's own
> testimony regarding what he is able to do.  Social Security Ruling 96-2p

14

states that "[c]ontrolling weight may not be given to a treating source's medical opinion unless it is well-supported by medically acceptable clinical and laboratory diagnostic techniques."  . . . I have not disregarded Dr. Davis' opinions.  In fact, I have thoroughly considered them in light of the totality of the evidence and, for the reasons stated in this and the preceding paragraph, I find them entitled to little or no weight to the extent that they are inconsistent with the residual functional capacity assessment assessed herein.

(R. 38).

Martin argues that the ALJ's determination that Dr. Davis' opinion lacks sufficient medical support is not supported by substantial evidence because his notations show the results of diagnostic examinations.  This court's review of Dr. Davis' medical records indicate that Dr. Davis ordered x-rays of Martin's left hip, lower spine, abdomen, and sinuses (R. 558, 564, 566).  The record, however, does not include the results of the x-rays.  It is the plaintiff's burden to obtain her own medical records to support her allegations of disability.  *See Robinson v. Astrue*, 235 Fed. Appx. 725 (11th Cir. 2007), (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (*per curiam*)). More importantly, the plaintiff does not allege that the results of the x-rays ordered by Dr. Davis were significantly different from other recent medical records, such as from the results of her MRI in September 2009 and the epidurogram and discogram in October 2009 indicating abnormal discography at L4-5 with a relatively normal disc at L3-4 and previous fusion at L5-S1. (R. 441, 449).  The record also indicates that Martin sporadically sought treatment from Dr. Davis or other medical personnel at American Family Healthcare for her back condition.  (R. 434, 436, 668-62, 564-66).

Martin also argues that the ALJ erred in discounting her treating physician's opinion based on her request that Dr. Davis provide an opinion for purposes of applying for social security benefits.  In her opinion, the ALJ noted that Martin sought opinions from Dr. Davis regarding her disability on at least two occasions.  (R. 38).   In addition, he found as follows:

> The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another.  Another reality that should be mentioned is that, as here, patients can be quite insistent and demanding in seeking supporting notes or reports from their physicians, who might provide such a note in order to satisfy their patients' requests and avoid unnecessary doctor/patient tension.  While it is difficult to confirm the presence of such motives, they are more likely in situations such as [the] present case, where the doctor is unable to cite any objective evidence in support of his opinions.

(*Id*).

If the ALJ's sole basis for discounting Dr. Davis' opinion was based on his sympathy toward his patient, the court would question whether the ALJ properly discounted the treating physician's opinion.  In this case, however, Dr. Davis' opinion was unsupported by objective medical evidence and the record as a whole.  Thus, the ALJ properly discounted the treating physician's opinion regarding Martin's medical conditions and the extent of her physical limitations. *See Sullivan v. Commissioner of the Soc. Security Admin.*, 353 Fed. Appx. 394, 397 (11th Cir. 2009) (ALJ's discounting of treating physician's opinion based on a determination that treating physician was sympathetic to claimant, that she did not document objective findings, that her diagnoses were contradicted by other physicians, and that she only treated claimant a few times in

the span of six years was supported by substantial evidence).   This court therefore finds

that the ALJ's discounting of Dr. Davis' opinion is supported by substantial evidence.

### (2)  Dr. Friej's Opinion

Martin argues that the ALJ improperly rejected the consultative physician's

opinion about the severity of her limitations.  On April 14, 2010, Dr. Walid W. Friej, a

consultative neurologist, conducted a physical examination.   Dr. Friej found no

limitations or restrictions of flexion of the cervical and thoracolumbar spine and no

limitation of extension of the lumbosacral spine.  (R. 535).  He also noted that Martin

wore a back brace and held a cane with her right hand.  (*Id*).  In addition, he found that

she was unable to "lie down on the examining table because of the severity of her pain

and therefore straight leg raising could not be done." (*Id*).  Dr. Friej assessed lower back

pain which did not respond to conservative management with physical therapy and

injections, status post-discectomy and fusion at L5/S1 March 18, 2009, and pain in the

lower back which "radiates down to the lower extremities, indicating LS radiculopathy

and LS spinal stenosis."  (R. 536).  He concluded that Martin "would not be able to do

work related activities that would require her to stand or walk for a period of time.  She is

not able to carry or lift.  She is able to hear and speak.  Patient can travel only in

moderation." (*Id*).

In a Medical Source Statement, Dr. Freij also found that Martin is able to lift and

carry no more than ten pounds occasionally due to her back pain and status-post

discectomy and fusion, that she is able to stand or walk without interruption for no more

than thirty minutes, sit for no more than four hours, and stand or walk for no more than two hours. (R. 538). He noted that she is able to ambulate no more than ten feet without the use of a cane, that she should never reach, push, or pull, that she should only occasionally handle, finger, and feel, and that she should never operate foot controls or perform postural activities, such as climb, balance, stoop, kneel, crouch, or crawl. (R. 539-41). He also found that she is unable to shop, travel without a companion, ambulate without using a wheelchair, walker, or two canes, walk a block at a reasonable pace, use standard public transportation, or climb steps without the use of a handrail. (R. 542).

Dr. Friej is a consultative neurologist and not Martin's treating physician. Thus, his opinion is not entitled to the same substantial weight due the opinion of a treating physician. *See McNamee v. Social Sec. Admin*., 164 Fed. Appx. 919, 923 (11th Cir. 2006).

After reviewing all the medical records, the ALJ discounted the opinion of Dr. Freij based on inconsistencies between the doctor's own findings and Martin's testimony regarding her abilities. This court's review of Dr. Friej's physical evaluation and medical source statement indicates several inconsistent findings. For example, Dr. Freij found that Martin is unable to lift or carry anything but that she is able to carry or lift up to ten pounds occasionally. (Tr. 536-37.) In addition, he found that Martin is able to walk with a cane and use her free hand to carry small objects, but also noted that she is unable to walk without the use of a wheelchair, walker, or two canes or crutches. (R. 538-40.)

Martin also argues that the ALJ ignored Dr. Friej's diagnosis of spinal stenosis. While Dr. Freij assessed that Martin had "pain in the lower back [that] radiates down to

the lower extremities, *indicating* LS radiculopathy and LS spinal stenosis," nothing in the record indicates that she was diagnosed with spinal stenosis.   (R. 536).   Moreover, an MRI occurring five months after Dr. Friej's evaluation indicates no evidence of stenosis. (R. 568).   Consequently, the ALJ's determination that Martin was not diagnosed with spinal stenosis is supported by substantial evidence.

Because the ALJ gave specific reasons for according less weight to Dr. Friej's opinion and based her decision on substantial medical evidence, the court concludes that the ALJ did not err in discounting Dr. Friej's opinion concerning the extent of Martin's limitations.


### C.  The Eleventh-Circuit Pain Standard

Martin asserts that the ALJ failed to properly discredit her pain testimony.  During the hearing, Martin testified that her pain worsened after the surgical fusion, that she suffers from pain radiating down both legs three to four times a week, that pain injections and physical therapy are not effective, that on a ten-point scale her back pain is a four on good days and an eight on bad days, that she has at least three bad days a week, and that pain affects her ability to focus.  (R. 62-68).

"Subjective pain testimony supported by objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which the plaintiff complains is *itself* sufficient to sustain a finding of disability."  *Hale v. Bowen*, 831 F.2d 1007 (11th Cir. 1987).  The Eleventh Circuit has established a three-part test that applies when a claimant attempts to establish disability through his own testimony of pain or

other subjective symptoms. *Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir. 1986); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). This standard requires evidence of an underlying medical condition *and either* (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) an objectively determined medical condition of such severity that it can reasonably be expected to give rise to the alleged pain. *Landry,* 782 F. 2d at 1553. In this circuit, the law is clear. The Commissioner must consider a claimant's subjective testimony of pain if he finds evidence of an underlying medical condition and the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain. *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry*, 782 F.2d at 1553. Thus, if the Commissioner fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, the Commissioner has accepted the testimony as true as a matter of law. This standard requires that the articulated reasons must be supported by substantial reasons. If there is no such support then the testimony must be accepted as true. *Hale*, 831 F.2d at 1012.

The ALJ considered Martin's testimony and discussed the medical evidence. The ALJ acknowledged that Martin's impairments could reasonably be expected to cause pain, but that her "statements concerning the intensity, persistence and limiting effects of her alleged symptoms [are] inconsistent, exaggerated and not credible to the extent" alleged. (R. 29). Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995);

*Jones v. Dept. of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "'the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding.'"  *Foote*, 67 F.3d at 1562, *quoting Tieniber*, 720 F.2d at 1255 (although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).  The ALJ has discretion to discredit a plaintiff's subjective complaints as long as he provides "explicit and adequate reasons for his decision."  *Holt,* 921 F.2d at 1223.  Relying on the treatment records, objective evidence, and Martin's own testimony, the ALJ concluded that her allegations regarding back and leg pain were not credible to the extent alleged and discounted that testimony.  After a careful review of the ALJ's analysis, the court concludes that the ALJ properly discounted the plaintiff's testimony and substantial evidence supports the ALJ's credibility determination.

The medical records support the ALJ's conclusion that, while Martin's lower back condition could reasonably be expected to produce pain, her impairment is not so severe as to give rise to disabling pain.  The medical records show that Martin's condition gradually improved after undergoing a spinal fusion in March 2009.  During a follow-up appointment with Dr. Holt on July 9, 2009, Martin stated that "compared to her preoperative level she is doing quite well."  (R. 443).  In addition, Martin did not seek medical treatment from a specialist for her back condition between December 2009 and February 2010 or between March and July 2010.  (R. 548, 559-63).  She also attended

only three physical therapy sessions after the spinal fusion.  (R. 459-68).  During each session, the physical therapist noted that Martin made mild progress by tolerating modalities and decreasing her pain at the end of each session. (R. 459, 462, 465).  The physical therapist also found "positive Wadell signs" and noted that Martin's problems with accomplishing short term goals to reduce pain along her lumbar spine and/or lower extremities were due to "lack of self management."  (R. 459, 462-64).  In addition, the medical records support the ALJ's conclusion that, with the exception of an abnormal discography at L4-5 and previous fusion, Martin's x-rays and MRIs after surgery were relatively normal.  (R. 24, 32-35, 40, 406, 441044, 534-36, 559, 563-66, 568).

Martin's improvement after surgery is also evident from testimony about her daily activities.  During the hearing, Martin testified that she washes dishes and irons while sitting for thirty minutes twice a week, prepares breakfast or dinner for thirty minutes twice a week, sweeps two rooms at least three times a week, changes the sheets on her bed by herself, and attends church twice a month for an hour to two hours at a time.  (R. 69-72).  She also stated that she washes one or two small loads of clothes a day, that she can walk for twenty minutes, that she can bend and touch the floor, and that she can sit between two and four hours but would need to stand after an hour.  (R. 76, 79, 82). Martin also stated that she would be able to sort books for no more than two and a half hours every day.  (R. 78).  Thus, the ALJ's finding that Martin's testimony regarding her daily activities conflicts with her allegations regarding the extent of her pain is supported by substantial evidence.

Martin also argues that the ALJ erred in relying on medical treatises which were not presented as evidence at the hearing.  Specifically, she asserts the ALJ substituted his judgment for that of a medical expert when relying on medical articles to determine that a physical therapist's findings of four Waddell signs are indicative of malingering.  After referencing several medical treatises and articles to explain the concept of Waddell signs, the ALJ concluded:

> . . . It is true that malingering is not the only conclusion to be drawn from the detection of positive Waddell signs.  *See* Chris Main, Ph.D., and Gordon Waddell, D. Sc., M.D., *Behavioral Responses to Examination: A Reappraisal of the Interpretation of "Nonorganic Signs,"* 23 Spine 2367-2371 (November 1998).  The cause may be psychological and that possibility has been considered.  However, the sheer number of positive Waddell signs detected in this case, the repetitive detection, and the detection by more than one examining source, when considered in combination with the claimant's inconsistent documentary and testimonial statements, her pattern of non-compliance with recommended treatment, and the lack of any hint (by way of allegation or evidence) of a psychological disorder, clearly raise a strong inference of highly questionable credibility with symptom magnification as opposed to a psychological cause.

> The claimant has described daily activities that are significantly limited; however, at least three factors weigh against considering these allegations to be strong evidence, in favor of finding disability.  First, the allegations cannot be objectively verified with any reasonable degree of certainty.  Second, assuming, arguendo, that her activities are as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's impairments, as opposed to other reasons, in view of the medical evidence.  Third, the claimant's testimonial descriptions of her limitations and symptoms are inconsistent (often exceedingly so and subject to change during the course of the hearing), unusual (as in the case of her claim that the alleged radicular symptoms move from one leg to the other), or so extreme, in light of the medical record, as to appear implausible.  Such inconsistent, changing and extreme statements, when viewed in light of the medical evidence (including the presence of multiple Waddell signs and noncompliance) left the impression that the claimant may have been less than candid.  Thus, overall, the claimant's reported limited activities are

found to be outweighed by other factors discussed in this decision.  Further, the claimant has admitted to certain abilities which provide support for part of the residual functional capacity conclusion in this decision.

(R. 40).

Several courts have held that a physician's findings of Waddell signs are not by themselves affirmative evidence of malingering.  *See*, *e.g.*, *Ormon v. Astrue*, 497 Fed. Appx. 81, 85-86 (1st Cir. 2012); *Wick v. Barnhart*, 173 Fed. Appx. 597, 598-99 (9th Cir. 2006).  Recently, in *Minor v. Commissioner of Social Security*, the Sixth Circuit Court of Appeals noted:

> "Waddell's signs" are the most well-known of several tests developed to detect non-organic causes of low back pain.  Samuel D. Hodge, Jr. & Nicole Marie Saitta, *What Does It Mean When A Physician Reports That A Patient Exhibits Waddell's Signs?*, 16 Mich. St. Univ. J. Mad. & L. 143, 155-56 (2012).  "A positive Wadell's sign may indicate that the patient's pain has a psychological component rather than organic causes.  While it is a common perception in the litigation arena that these signs are proof of malingering and fraud, they merely describe a constellation of signs used to identify pain in those who need more detailed psychological assessments." *Id.* (footnote omitted). "The literature . . . reveals that there is no association between positive Waddell signs and the identification of secondary gain and malingering.  Patients with strong psychological components to their pain often display these signs as well." *Id.* at 160 (footnote omitted).

513 Fed. Appx. 417, 422 n. 15 (6th Cir. 2013).

The court concludes that the ALJ's reference to Waddell signs when discussing Martin's credibility is not patently incorrect.  Because the ALJ considered several other factors, including the inconsistencies between Martin's testimony and medical records and her history of non-compliance with recommended treatment, the court concludes that the ALJ's inference that Martin was exaggerating the extent of her pain is supported by

24

substantial evidence.  *See Hilmes v. Barnhart*, 118 Fed. Appx. 56, 61 (7th Cir. 2004);

*Partida v. Astrue*, No. 8:10cv-2788-T-35MAP, 2012 WL 695671, *3 (M.D. Fla. Jan. 26,

2012) (finding substantial evidence supports ALJ's impression that the plaintiff was a

malingerer and able to perform work where other evidence in addition to Waddell signs

buttressed the ALJ's findings).

    In addition, Martin asserts that the ALJ's determination that she did not seek

treatment from a medical specialist is unsupported by substantial evidence.   In her

opinion, the ALJ found:

> During the hearing, the claimant testified that she never returned to
> Dr. Holt because she was afraid of a second surgery.  She claimed that Dr.
> Holt told her that there was nothing else that could be done, a statement that
> is unsupported by Dr. Holt's office records which reflect that "options"
> were discussed.  She claimed that her plan was to take her medication and
> find someone else to treat her without surgery.  In this regard, it is noted
> that, as of the date of the hearing, the claimant has not seen a specialist of
> any type and (despite the claim of 8 level pain which, according to the
> claimant, is little reduced by her current medications) she has not sought
> the services of a pain specialist.

(R. 35 n. 24).   Nothing in the medical records before this court indicates that Martin

sought treatment from a pain specialist after the hearing in November 2010.  The court

therefore concludes that the ALJ's determination that Martin did not seek treatment from

a medical specialist is supported by substantial evidence.

    Relying on the treatment records, objective evidence, and Martin's own testimony,

the ALJ concluded that Martin's allegations regarding the extent of her pain were not

credible and discounted her testimony.   After a careful review of the record, the court

concludes that the ALJ's reasons for discrediting the plaintiff's testimony were both

clearly articulated and supported by substantial evidence.  To the extent Martin argues that the ALJ should have accepted her testimony regarding her pain, the ALJ had good cause to discount her testimony.  This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and based upon the proper legal standards.  *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

## V. Conclusion

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that Plaintiff is not disabled.  Thus, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be AFFIRMED.

Done this 16th day of December, 2013.


        /s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE